IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JAMES HERRING, : | |
| : | |
| Plaintiff, : | |
| : | |
| V. : | |
| : | NO. 5:22-cv-00185-TES-CHW |
| COMMISSIONER : | |
| CHARLIE WARD, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |

## ORDER & RECOMMENDATION

Plaintiff James Herring, a prisoner in Baldwin State Prison in Hardwick, Georgia, filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. He also filed a motion for leave to proceed in this action *in forma pauperis*. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2. Plaintiff's motion to proceed *in forma pauperis* was previously granted, and Plaintiff was ordered to pay an initial partial filing fee of $24.83, which he paid. Order, ECF No. 5. Plaintiff was ordered to file a recast complaint, and he did so. On review of that complaint, Plaintiff's complaint was still found to be deficient, but he was given one final opportunity to recast his complaint. Order, ECF No. 12.

Plaintiff has now filed another recast complaint. On that review, Plaintiff will be permitted to proceed for further factual development on his claim that defendants Tatum, Booth, Ingram, Berry, Martin, Lumpkin, and Whipple were deliberately indifferent to his safety, resulting in Plaintiff falling on January 5, 2022. It is **RECOMMENDED** that the

remainder of Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** for the reasons set forth below.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I.  Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's recast complaint is subject to a preliminary review. *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings). When performing this review, the court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II. Factual Allegations

In the recast complaint, Plaintiff asserts that, at around 6:30 in the morning on December 24, 2019, at Coastal State Prison, he alerted Officer Annika Paaluhi that inmates Nathaniel Thomas and Trey Dion Jackson were planning to attack and rob Plaintiff. Suppl. 1, ECF No. 13. Around 10:00 a.m., Paaluhi left her post in the building, at which point, the other inmates did attack Plaintiff. *Id.* When Paaluhi returned, she called for backup and Plaintiff was taken to the medical department of the prison. *Id.* at 2. From there, Plaintiff was taken by ambulance to the hospital. *Id.* As a result of the attack,

Plaintiff lost vision in his right eye, his back was injured, and he suffers from post-traumatic stress disorder.  *Id.*

Plaintiff was later transferred to Baldwin State Prison due to understaffing and poor living conditions at Coastal State Prison.  *Id.*  On September 26, 2021, at Baldwin State Prison, Plaintiff suffered a massive seizure in the middle of the night.  *Id.*  At the time, there were no officers on duty, and Plaintiff was left on the floor until 6:30 a.m. before he received assistance.  *Id.*  Plaintiff verbally informed Defendants Warden Walter Berry, Deputy Warden of Security Eric Martin, Deputy Warden of Care and Treatment Tracey Lumpkin, and Grievance Coordinator Pretrillion Whipple about the incident, but they took no action.  *Id.* at 3.  Plaintiff also filed a grievance that he asserts brought the matter to the attention of Commissioner Timothy Ward, along with Berry, Martin, Lumpkin, and Whipple.  *Id.* at 2-3, 7.  The grievance also produced no results.  *Id.*

Around 10:45 p.m. on December 31, 2021, Plaintiff was again attacked at Baldwin State Prison while there were no officers on duty.  *Id.* at 3.  On that occasion, an unknown gang member tried to take Plaintiff's commissary items.  *Id.*  The gang member hit Plaintiff in the head with a piece of Plaintiff's walker and kicked Plaintiff in the back repeatedly.  *Id.*  Plaintiff asked Lieutenant Ingram to put Plaintiff into protective custody, but Ingram said that there were not any protective custody cells available, and Plaintiff would have to return to the cell where he was attacked.  *Id.*  Plaintiff was afraid for his life if he returned to that dorm, and thus, he refused.  *Id.*  At that point, Plaintiff was made to sit outside for six hours.  *Id.*

Ingram and Defendant Sergeant Tatum then put Plaintiff in Cell 4 in K-1. *Id.* at 3, 7. In that cell, there were not any safety provisions in place for a disabled prisoner such as Plaintiff. *Id.* Moreover, the other inmate housed in the cell was part of the same gang as the inmate who had assaulted Plaintiff. *Id.* at 3-4. Plaintiff told Defendants Sergeant Tatum, Lieutenant Sabrina Booth, and Lieutenant Ingram about the situation, but they forced Plaintiff to move into the cell anyway. *Id.* at 4. Plaintiff also brought the matter to the attention of Defendants Berry, Martin, Lumpkin, and Whipple when they did daily inspections. *Id.* at 7.

On January 5, 2022, around 6:45 p.m., Plaintiff fell while trying to use the restroom because there was no rail installed next to the toilet. *Id.* at 4. While lying on the floor, Plaintiff suffered another seizure. *Id.* His cellmate was afraid and yelled out the window for help. *Id.* Three hours later, Defendant Booth arrived, but she said that there were not enough officers to carry Plaintiff to medical, so she left Plaintiff on the floor. *Id.* Another thirty minutes later, Plaintiff was taken to medical. *Id.*

Following that incident, Plaintiff was returned to the same cell. *Id.* When Berry and Lumpkin would come by the cell for inspection, Plaintiff repeatedly showed them that he needed a cell that had accommodations for his disability. *Id.* For another seven weeks, they told Plaintiff that they were working on the situation, before finally moving him to an accessible cell. *Id.* at 4-5. Because of the fall, Plaintiff's doctors have determined that hardware in Plaintiff's spine has shifted. *Id.* at 5. As a result, Plaintiff has had to return repeatedly to the doctor and has suffered permanent injury. *Id.*

5

Finally, Plaintiff contends that the administration at Baldwin State Prison retaliated against him by deliberately putting Nathaniel Thomas in the same building with Plaintiff, even though Thomas had previously stabbed Plaintiff. *Id.* at 6. After bringing Thomas in, the officers left the building, and other individuals had to escort Thomas back out of the building. *Id.* In doing so, the administration ignored a separation order that prohibited Thomas from being around Plaintiff. *Id.*

### III. Plaintiff's Claims

#### A. December 24, 2019

Plaintiff's first claim is that in December 2019, Defendant Officer Annika Paaluhi left her post, allowing Defendants Nathaniel Thomas and Trey Dion Jackson to attack Plaintiff. This claim is barred by the statute of limitations. In particular, a § 1983 claim is governed by the forum state's general personal injury statute of limitations. *Owens v. Okure*, 488 U.S. 235, 236 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Thus, Georgia's two-year personal injury statute of limitations governs 42 U.S.C. § 1983 civil rights claims. *Reynolds v. Murray*, 170 F. App'x 49, 50-51 (11th Cir. 2006) (per curiam) (citing Ga. Code. Ann. § 9-3-33 (1982)).

Plaintiff's claims based on this attack arose in December 2019. Thus, he needed to bring those claims by December 2021. Plaintiff did not file this action until May 13, 2022, nearly five months after the statute of limitations had expired, and Plaintiff provides no allegations suggesting that anything tolled the statute of limitations before it expired. Thus, these claims should be dismissed as time barred.

Moreover, defendants Thomas and Jackson were inmates in the prison. Nothing in Plaintiff's allegations suggests that they were state actors. To state a § 1983 claim Plaintiff must allege facts showing that his rights were violated by a person acting under color of state law. *See Hale*, 50 F.3d at 1582. Thus, Thomas and Jackson are not proper defendants to a § 1983 claim. In light of the above, it is **RECOMMENDED** that Plaintiff's claims against Paaluhi, Thomas, and Jackson based on the December 2019 incident be **DISMISSED WITHOUT PREJUDICE**.

B. September 26, 2021

Plaintiff next refers to an incident in September 2021 when he had a seizure while no one was on duty. After the seizure, Plaintiff verbally told Defendants Warden Walter Berry, Deputy Warden of Security Eric Martin, Deputy Warden of Care and Treatment Tracey Lumpkin, and Grievance Coordinator Pretrillion Whipple. He also filed a grievance, which he asserts brought the matter to the attention of Commissioner Timothy Ward in addition to the other four defendants discussed in this claim. Plaintiff's allegations in this regard may implicate a claim for either deliberate indifference to safety or deliberate indifference to a serious medical need.

To state an Eighth Amendment claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk the prisoner's health or safety. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed but disregarded that risk.

7

*Id.* at 1289-90. If the defendant took action that reasonably responded to the risk, the defendant will not be held liable, even if the harm was not averted. *Id.* at 1290. Finally, the prisoner must assert facts showing causation between the defendant's deliberate indifference and the plaintiff's injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Similarly, to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts to show that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow*, 40 F.3d at 1243.

An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The disregard of risk must be "by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Id.* A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id.* Finally, "[a]n Eighth

8

Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." *Id.*

Whether Plaintiff has alleged facts showing a dangerous condition or a serious medical need is arguable. Plaintiff asserts that he had a seizure, but he does not explain whether he had previously had any seizures or what caused the seizure. Regardless, Plaintiff's allegations do not demonstrate that any defendant was deliberately indifferent to any serious medical need or dangerous condition. In particular, although Plaintiff refers to a lack of staffing, he does not set forth any facts showing that any of the named defendants was aware of a risk of harm to Plaintiff before this incident and disregarded that risk. Therefore, it is **RECOMMENDED** that any claim based on Plaintiff suffering a seizure in September 2021 be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### C. December 31, 2021

Plaintiff's next allegations concern an incident in December 2021 when Plaintiff was attacked by an unknown gang member. These allegations potentially implicate a claim for deliberate indifference to safety, but Plaintiff sets forth no allegations showing that any named defendant was aware of a risk of harm to Plaintiff and disregarded that risk. Plaintiff alleges only that he told Defendant Lieutenant Ingram after the fact and that she told him there were no protective custody cells available. These allegations do not show that Ingram or any other defendant was deliberately indifferent to Plaintiff's safety in connection with this attack. Therefore, it is also **RECOMMENDED** that any claims based on the December 2021 attack be **DISMISSED WITHOUT PREJUDICE**.

D. January 5, 2022

Plaintiff asserts that, following the December 2021 attack, he was placed in a cell that did not have safety provisions for disabled inmates. Plaintiff also contends that he was placed in a cell with an inmate from the same gang as the inmate who attacked Plaintiff. Plaintiff informed Tatum, Booth, Ingram, Berry, Martin, Lumpkin, and Whipple about the situation, but they no action was taken. Thereafter, on January 5, 2022, Plaintiff fell while using the restroom because there was no rail next to the toilet. Plaintiff suffered another seizure while he was on the floor. Booth did not arrive until three hours later, and when she did, she left Plaintiff on the floor for another thirty minutes before help arrived.

Plaintiff's allegations suggest that there may have been a dangerous condition in the cell insofar as the lack of rails left Plaintiff vulnerable to a fall. Moreover, Plaintiff had brought the condition to the attention of Tatum, Booth, Ingram, Berry, Martin, Lumpkin, and Whipple before he fell, but none of these defendants took any action. These allegations are sufficient to allow Plaintiff to proceed for further factual development on a deliberate indifference to safety claim against Tatum, Booth, Ingram, Berry, Martin, Lumpkin, and Whipple arising out of Plaintiff's fall on January 5, 2022.

E. Return to Cell After Fall

Plaintiff asserts that Warden Berry and Deputy Warden Lumpkin put Plaintiff back into the same cell without safety protocols following the fall. In this regard, Plaintiff does not allege that he suffered any further injury on his return to that cell, and he has since been moved from the cell. Similarly, to the extent that Plaintiff intended to assert that being placed in the cell with the gang member constituted a dangerous condition, Plaintiff did

not allege any facts to show that the situation was dangerous or that he suffered any injury as a result of that situation. To the contrary, Plaintiff's cellmate called for help when Plaintiff fell in January 2022. Accordingly, it is **RECOMMENDED** that Plaintiff's claims based on being put into the cell with the gang member or being put back into the cell following the fall and seizure be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

F. Placement in Building With Nathaniel Thomas

Plaintiff next asserts that prison administrators ignored a separation order and put Plaintiff into the same building with Nathaniel Thomas, one of the inmates who had previously attacked Plaintiff. Plaintiff does not identify the particular individuals involved in this claim, referring only to administration and officers. Moreover, Plaintiff does not provide any factual allegations showing that he was in any danger from Thomas, much less that he suffered any injury. Thus, Plaintiff's allegations in this regard do not state a claim for relief, and it is **RECOMMENDED** that any claim based on being placed in a building with Thomas be **DISMISSED WITHOUT PREJUDICE**.

G. Remaining Defendants

i. No Allegations

In previous versions of the complaint, Plaintiff included as defendants Coastal State Prison Warden Perry, Sergeant Gilmore, Unit Manager Jackson, Coastal State Prison Warden Brooks L. Benton, CERT Officer Treywick, Officer Black, and Officer Jones. Because Plaintiff's recast complaint does not include any allegations against these defendants it is **RECOMMENDED** that they be **DISMISSED** without prejudice.

11

ii. Georgia Department of Corrections

Plaintiff also named the Georgia Department of Corrections. The Eleventh Amendment bars suits directly against a state or its agencies. *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). This bar applies "regardless of whether the plaintiff seeks money damages or prospective injunctive relief." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The Georgia Department of Corrections is thus protected by sovereign immunity. *Id.*; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 98, 71 (1989) (explaining that the state and its agencies are not "persons" for the purposes of § 1983 liability). Accordingly, it is **RECOMMENDED** that Plaintiff's claims against this entity be **DISMISSED WITHOUT PREJUDICE**.

iii. John Does

Plaintiff also included John Doe defendants. Fictitious party pleading, *i.e.*, bringing claims against John Doe defendants, is generally only permitted in federal court when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his or her actual name is unknown. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Plaintiff has not provided any allegations regarding their involvement or information regarding the identity of any Doe defendants, and it is **RECOMMENDED** that any claims against these defendants also be **DISMISSED WITHOUT PREJUDICE**.

IV. Conclusion

As discussed above, Plaintiff will be permitted to proceed for further factual

development on his claim that Tatum, Booth, Ingram, Berry, Martin, Lumpkin, and Whipple were deliberately indifferent to his safety, resulting in Plaintiff falling on January 5, 2022. It is **RECOMMENDED** that the remainder of Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** for the reasons discussed above.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANTS WARDEN WALTER BERRY, LIEUTENANT SABRINA BOOTH, SERGEANT TATUM, LIEUTENANT INGRAM, DEPUTY WARDEN TRACEY LUMPKIN, GRIEVANCE COORDINATOR PRETRILLION WHIPPLE, and DEPUTY WARDEN ERIC MARTIN**, and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of the duty to avoid unnecessary service expenses, and

the possible imposition of expenses for failure to waive service.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and

where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 11th day of January, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
